Good morning your honors. Chip Noss for Mr. Danny K. Prince. May it please the court. Your honor, essentially the issue before this court is on the Louisiana Lease of Movables Act. May a lessor avoid the rule that prohibits the collection of accelerated rent after it's recovered possession of the leased equipment by including in the lease a stipulated damages clause that is predicated on future rent. The lower court held that that clause was not enforceable. And so the next issue with the lower court's ruling is may the lower court then focus on a transaction between the original lessor and the assignee in order to come up with stipulated damages under a lease. The lease itself does not give the assignee that right. And section 3318 of the Lease of Movables Act, as interpreted by this court in GE Capital, says that you have to look to the lease for other amounts provided in addition to past due rent. That's the issue. The lower court said the stipulated damages provision is not enforceable, but then it turned to the transaction between the assignee and the original lessor, which was nothing more, your honor, when you strip it down to its essence other than a sale of the lease itself pursuant to a non-recourse note. And everybody agrees in this case that the lease is a true lease under Louisiana law, that the Louisiana Lease of Movables Act applies because regardless of whether the lease was consummated, the property was in Louisiana when it was recovered by the lessor. Now, if you look in the First Amendment complaint filed by the Bank of the West and the affidavit in support of its motion for summary judgment, it calculates its damages due under the lease and it gives you the major component of those stipulated damages, which is 34 future rents. So, again, I think the lower court's ruling on holding that that provision was unenforceable was correct. But then we turn to the loss on the note, which is what they paid for the lease, they had no recourse against the original lessor, and then they deduct the same amounts, the cost of the equipment that they sold, which they owned, by the way, and had the right to sell, but it has no bearing on the damages under the lease. In fact, I would submit to you, Your Honors, that by selling the lease equipment that they owned under Louisiana law and had title to, they foreclosed the opportunity to argue that they were entitled to stipulated damages for lost opportunity costs, namely the amount of rent that they were receiving from the lessee, Gladiator, compared to what they could have leased it for. To someone else at that time, they elected the remedy and treated it like a finance transaction, a retail installment contract, sold the lease equipment, and they're essentially asking this court and the lower court for the deficiency amount. And just so Your Honors understand, I do this not just in the context of defending Mr. Prince. I'm typically on the side of Mr. Archeneau's clients. I do extensive collection work. I've filed probably 25 summary proceedings, and I believe that the Louisiana Lease of Moveables Act means what it says. As this court says in GE Capital, you can do one or the other, but you can't do both. The remedies are mutually exclusive, and you can't dodge the future rent prohibition if you recover the lease equipment by manipulating the stipulated damages clause to provide that it's a measure, that the future rent is a measure of the stipulated damages. But not the same as future rent. I just don't follow that logic from the Bank of the West. So, for that reason, Your Honor, I would submit that the lower court's decision on holding the stipulated damages clause unenforceable is correct. And I would submit that the lower court's decision by then turning outside the lease document and focusing on the acquisition documents that Bank of the West acquired the lease by to come up with the stipulated damages number is totally inappropriate. It's not consistent with this court's decision in GE Capital, which is squarely based on the language of 3318 that says you can get past due amounts and other amounts provided by the lease, but the loss on an investment or the purchase of a lease under a promissory note, they do not constitute stipulated damages or damages at all under a lease. So if we were to agree with you, I don't know which way we'll go, but if we were to agree with you to reverse this judgment and remand, what would the final paragraph of our opinion say in terms of telling Judge Foote what to do? Well, Your Honor, I think under the facts of this case, there were cross motions for summary judgment. So they put into evidence all of the stipulated damages that they thought they were entitled to. I think in this case, they could have put in the recovery of the cost to recover the lease equipment. If you look in the express blower case, there's a list of damages that the lessor recovered. My question was, what do we tell Judge Foote to do if we send the case back? Well, I think, first of all, I don't think you ought to send it back. I think you ought to reverse and render because there is no evidence before the court of stipulated damages recoverable by the lease. There's no evidence that the cost of recovery of the lease equipment to transport it, to store it, to repair it. We should render a take-nothing judgment? Is that what you're saying? I'm just trying to understand what you're asking for. Your Honor, based on that they were submitted for cross motions for summary judgment, I do think that is the correct decision. There's no evidence in the record of stipulated damages to which the Bank of the West is entitled. So in that case, I think the judgment ought to be you get or the Bank of the West gets, which we do not dispute, the amount of the past due rent, which is $118,000 and some change. You get that amount plus interest. I do believe that is correct. I think the attorney's fees ought to be less because I don't think you ought to get attorney's fees for pursuing something you're not entitled to under Louisiana law. I would tell you again that I've never pursued in the cases where I filed a summary petition to recover leased equipment, I've never pursued under any guise or label accelerated rent after the time period for which the leased property was recovered. That goes in bankruptcy cases where I filed proofs of claim and the like. I mean, I read your decision in GE Capital and I read 3318 of the Louisiana Lease of Moveables Act for what it says. I can do one or the other, but I can't do both, and I can't do both by mischaracterizing or disguising the accelerated rent as stipulated damages. And the other thing to keep in mind, Your Honor, that this remedy is available. If they had wanted to get the accelerated rent, that remedy was available. They could have sued my client and the lessee for the past due rent and the accelerated rent, obtained a judgment, which I've done on numerous occasions, then they could have, pursuant to a writ of FIFA, exercised that writ of FIFA and seized the lessee's right of occupancy in the leased equipment, and then we would be talking about a deficiency claim under the judgment after that seizure. Or they could have elected to recover the entire amount from my client, but they did not do that, Your Honor. They elected the mutually exclusive remedy of recovering possession of the leased equipment, which limits them under 3318 to the past due rent and other amounts provided by the lease. And they put no evidence on of any other amount provided by the lease for stipulated damages other than what's prohibited by Louisiana law, which is future rent. Well, what was Judge Foote's analysis of this? It seems—tell me what is there beyond what I'm going to say. It seems to me she's saying that what was the liquidated stipulated damage in the lease was inappropriate under her interpretation of this act. So she looked for some alternative that would be a legitimate basis to have— I don't think she was really saying to have put in the original lease, though maybe she did. But was that her concept, that since the claim could not include the liquidated damages on the lease, they were still untitled on some principle to additional damages? And if so, what is that principle that she at least was seeing? Your Honor, what I think she did based on her opinion is I think she—because she decided that we were correct about the stipulated damage supervision, and you'll remember the history of this case. We got in for Mr. Prince after this suit was originally filed. This was pending before her on a motion for summary judgment filed by the Bank of the West. The Louisiana Lease of Movers Act had never been brought up. And so she was ready to render summary judgment against our client, and we notified the court pursuant to a memorandum that we filed in the record about the act of the law. And so your question to me is what did she do? I think after she agreed with us that you could not get future rent under the lease, despite how it's characterized, if it amounts to accelerated rent, I think she looked for a way to give them what she thought was another means of damages, the loss of profit on the transaction pursuant to which they acquired the lease. What she's looking for is what rights she thought she had to do that. And what I'm reading is from her opinion, while Prince claims this court has vast discretion to make its own damage calculation, the bank contends the court should only make—and this is your side, as I understand it, the bank— contends this court should only make its own calculation if it finds the stipulated damages amount to be unreasonable. So she's saying on the one hand, Prince argues she has vast discretion. On the other hand, the bank argues it should only make its own calculation if the stipulated damages are not reasonable. So she thought you were arguing that she has this discretion. No? Isn't that what she says? I'm sorry. I misunderstood your question. Well, in her position, from what I just read, that Prince claims the court has vast discretion to make its own damages calculation, and the bank contends it can make its own calculation if it finds the stipulated damages are unreasonable. So I think from her viewpoint, she was saying both sides are saying at some level I have the right to make a decision on appropriate damages. Your Honor, I would agree with that, but I also would limit that to what the lease provides. Well, but that's not what she says. Was that in some memorandum that you gave her and that she's not pulling that out of it? Well, I do think that if you read our brief, we limit your right to stipulated damages. Your brief to her? Correct. Your right to stipulated damages is based on, number one, what the lease provides, and number two, what 3318 says, because 3318 says, as this Court said in GE Capital, other amounts provided by the lease. And I can assure you that we did not suggest to her in any form or fashion that she can step outside of the lease document and award stipulated damages based on a loss of investment under a note, a non-recourse note, pursuant to which they purchased the lease. That, again, if you look at the way that's calculated in their brief, Your Honor, it's a component of stipulated damages. It's just a lesser amount or future rent. It's just a lesser amount. I guess my question really is, did you argue to her what you're arguing to us now? Or if we look at the briefing in the District Court, would she have had a different argument in some manner? Your Honor, all I can tell you is my briefs are going to say what they say, but I do believe, and so I don't want to misstate what my brief says because I can't remember every single argument I made in my lower court brief because there was a series of lower court briefs because we brought the Lease of Moveables Act to the Court's attention. But the important thing is that we cited 3318 and we cited the lease provision, neither of which allow her to step outside of the lease document and award damages based on the transaction between the lessor and the original lessor in the Bank of the West. And I would like to reserve the rest of my time for rebuttal. You've saved time for rebuttal, Mr. Nash. Thank you very much. Mr. Arsenault. Good morning, Your Honors. Tom Arsenault on behalf of Bank of the West. I want to start with Judge Southwick's question because the statute itself answers your question, Your Honor. I want to start first with a complete reading of Section 3318. Here's what it says with respect to the lessor's remedies under the Louisiana Lease of Remedies Act. He may cancel the lease, recover possession of the lease property, and recover such additional amounts and liquidated damages as may be contractually provided under the lease agreement. What you're saying is modified by as may be contractually provided. One way to read this is the additional amounts and the liquidated damages must both be contractually provided. That's not what you think this means? I do think that's what it means. But what are the additional amounts? Where in the lease did the additional amount that she awarded, where was that set out in the lease? I'm getting there, Your Honor. Let me get to the next section. I just want to make sure how you're reading this statute. So you're saying that all the damages, you're agreeing to that extent with your friend on the other side, that the lease, whatever the relevant contract is, must provide for the additional damages and must provide for liquidated damages if you are to recover them. That's correct. And this lease did provide for liquidated damages. Now, to answer the rest of your question, Your Honor, you have to go to Section 3325B, and it says the court shall award liquidated damages to the lessor only if it finds the amount thereof to be reasonable. If the court finds the amount of liquidated damages to be unreasonable or if there is no such stipulation, then the court may, in its discretion, award liquidated damages to the lessor. My interpretation of what Judge Foote did, and I'm going to suggest to the court that I think she was wrong in doing this, but what Judge Foote did was to exercise the discretion given her in Section 3325B. The liquidated damages provision that you put in the lease, I'm going to find, is unreasonable because you can't use the rent, but I'm going to find another basis, and here's what she did. She said, we know what you paid. $832,000. We know that you received a couple of hundred thousand dollars in lease payments while there were payments. We know that you recovered a net recovery of several hundred thousand dollars on the equipment, and if you subtract all those things, it leaves you $154,000 short of what you would have invested. So I'm going to make you whole. I'm going to bring you to zero. And so that's what the judge did. You consider, you add the past due rent, which is conceded, you take the amounts that were actually paid, you take the amount, the net recovery on the lease, and you subtract all of that from the $832,000 that was what the investment was in the equipment by the Bank of the West, and that leaves you short, Bank of the West, $154,000. So I'm going to award you the unpaid rent plus an amount to bring you to zero. That's what I will do. Now. Well, is there a definition of liquidated damages? I know this is Louisiana, and I shouldn't expect that their use of phrases is what I'm used to, but it seems to me if liquidated damages are to be recomputed after the fact, it's still a prospective estimate of damages, that at the time that the lease was entered, what would be a reasonable way to have liquidated damages, as opposed to, retrospectively, to say what the actual damages are. Is that what liquidated damages means, to the extent you can get any meaning out of what I just said, that it is a prospective estimate of reasonable damages put in some sort of contract, lease here. The amount is unreasonable according to a court, so you make a new effort to give what a reasonable perspective was. Maybe there's some standard in the industry for these leases of what a liquidated damage provision would be. Is that your sense of what it's talking about? On the first part of your question, Your Honor, I agree, because what the lease does, this lease, it is a true lease instead of a technical finance lease, so I don't want to get into that, except it's still a financing vehicle. The bank is not in the business of leasing these pieces of equipment. What happens is Gladiator, this is a guarantee case, so Gladiator wants to have an expensive piece of equipment, a piece of equipment that costs $800,000 or $900,000, but it doesn't want to use its capital, and it doesn't want to borrow the money, so it gets a lender or a financing vehicle to buy the vehicle and lease it to them. So what that person has is an expectation of cash flow over time. Therefore, if you have a breach and you recover the property, then you don't get to accelerate the rent. This does not call for an acceleration of rent. It says we're going to discount the cash flow to present value, and we're going to use a 2% rate. And so here's how that works out in this case. You have liquidated damages calculated from the time of the breach. So that includes the unpaid rent, the $118,000, until the end of the term of the lease, and you discount that cash flow 2%. So in our calculation, we are discounting the $118,000 that they acknowledge that exists, because we're saying we're going to discount that, we're going to capitalize that to approximate the loss of profit that we're going to have. And what does that amount to in this case? $60,247.77. That's the lost profit based on the stipulated damages formula in the lease. And why is that reasonable? Because $60,000 is about 7% of $832,147.91. So what we're asking you to do is to reverse Judge Foote to say it's fine to get them to zero, but they were also entitled to recover, as Article 1995 of the Civil Code says, cited by the appellant. They're also entitled to recover the lost profit, because Judge Foote's calculation just gets them to zero. It doesn't get them to any return on investment. And so what we're asking the court to do— Accelerated rent was not in here. It's some other calculation. Would you have the argument that if the numbers made it look that way, would you still have the argument that you have entitled to this additional amount of lost profit, or would you be limited to what 3318B says, which is additional amounts of liquidated damages as set out in the contract? The only liquidated—the only formula for liquidated damages set forth in the contract is the discount to 2%. What I'm saying is if that were valid, if she had upheld that, are you saying you still would be entitled to this lost profit calculation? No, I think I'd be entitled to what—I would be entitled to what the lease provides, which is the $333,628.76. But that would include the discounted 118, so it's not in addition to that. Are you just saying that her effort to calculate a new damage amount wasn't properly done because it did not include your calculation of lost profit? Yeah. Could the judge have come up—could Judge Foote have come up with a different factor and placed in another number there? Yeah, I believe that she could have. I do not know what it would have been based on, Judge Southwood. What case law is there of a scenario like this where liquidated damages are being calculated under whatever this other section is, under 3328, if I wrote it right, B? Is there a case law? I didn't— And looking at coming up, as I was saying earlier, with what I would call a liquidated damage, what that really means, what would a fair liquidated damage at the time of the execution of the lease have been? Are they looking at something else? I did not find any cases that said a judge made this determination under 3325B and it was affirmed or reversed. I did not find that, Judge Southwick. But most of the time, what Louisiana would probably more often call them stipulated damages as opposed to liquidated damages, but the concept is the same. The concept would still be in the original document. You would stipulate what your damages would be. It might be an amount, but it also might be a formula, Your Honor. It might be a method of determining that because the reason that you put stipulated damages in is the idea is it's not a penalty. It is we're not sure that we could calculate these things precisely, so here's how we're going to agree to calculate them in the event that there's an occasion to calculate them. We're going to agree with Judge Foote and we may well not, but she certainly has a valid point that it looks to be that this was an end run around the prohibition on getting both the right to counsel and recover possession and under subpart A to collect the unpaid rent. That's a legal question. Was it indeed the functional equivalent of trying to do both? And if that is the case, we are down to trying to decide whether what she did was appropriate. I agree, Your Honor. Let me disagree on the first point and agree on the second point. I disagree that, and there are at least three Louisiana cases cited in our brief where they did, in fact, use future rent to determine stipulated damages. Your Honor, on this court, not that you know my history. You know my history 12 years ago. When I first got here, people told me that in Louisiana you don't look at case law. You look at the statutory text, and I don't think Louisiana's do that, and that you're citing these cases to me for unambiguous statutes, I would say, to tell me what the statutes really mean. Isn't that a violation of what Louisiana does supposedly in interpreting statutes? Your Honor, I'm a dedicated civilian, and so I certainly agree that that's what Louisiana courts ought to do. When you look at this statute, however, it says you award the stipulated damages that the parties have agreed to if you find them reasonable. Okay? So that's where the judicial interpretation comes in, is Judge Foote found, given the circumstances, that they were unreasonable. But that's a question of law, and she was wrong on that question of law, because one can use the future rent because of the circumstances of this case. It is a discount to cash value. If you were trying to value what you lost in an investment, you would use a discount to present value. It wasn't the total amount of the rent. It was the discounted value. It was the capitalization of the rent. That is a very standard way of coming up with these numbers. And when you look at the actual numbers, Judge Southwick, it comes out to, the way it works out in this case, it comes out to what is a reasonable return on the investment if you apply the stipulated damages as provided in the lease. And that's what we think was supposed to occur, because, like I say, the 333 includes the other numbers. Okay? I mean, I think we're not asking for 333 plus 118. We're just asking for 333. And so when you look at the back-to-zero amount, which is Judge Foote's amount, and you look at the 333, you get a difference. The only difference we're seeking in our cross-appeal is $60,247.77. And that would be a return. And when you take that number and divide it by the investment, it's a very reasonable return over several years. And so that's why the stipulated damages is based on what that stream of income was going to be, because when you buy the lease, you're expecting, I'm going to get this amount of payment over the course of time. And when I don't get that, the measure of my damages is that stream of income, my return on my investment discounted to present value. And it is the discount to present value. It's not accelerated rent. It's simply a means of calculating the loss of profit to the lessor or the lessor's assignee, and there is nothing unreasonable about that. Can you respond to your friend on the other side's argument that you could have gotten appropriately to more or less the same place by filing a collection action? Actually, Judge Southwick, I think we would have gotten more money if we had done that. I think the way we went about it was the most reasonable way that was the most favorable to his client. We could have gotten a judgment for the whole amount of the lease and not worried about the piece of equipment. And then he would have had to worry about it. The point is not how much money you would have made. The point is whether what you're trying to do under B is what would have been appropriate under A, and that is ultimately you would have gotten the equipment through the kind of lien perhaps or sale that Mr. Noss was talking about, but you would have been allowed to accelerate the rent. And now you're trying to sort of do things in reverse order under B, and we're not the Louisiana legislature. We're trying to figure out what they mean by this and not whether the shortcut, if that's what it was that you took, would have gotten you to the same place or not, but whether it was the wrong combination of both canceling the lease but accelerating the rent that is prohibited. So I'm getting from you not much of an answer to whether A is really what you did, but it's in a somewhat different order. No, sir, it's not, because this way benefited the debtor more than the other way. This was the most fair way to deal with it is to determine what the actual loss was going to be, to take the piece of equipment back which they weren't selling, to sell it to someone else because we're not in the business of renting these widgets out to other people, and as a result reducing the exposure of the debtor. Whereas I could have gotten, my client could have gotten a judgment for the $800,000 or $900,000, and that's not what we're seeking. So if we had done what Mr. Noss suggested, we'd have had a larger judgment against his client, not a smaller one, and that's why those damages are reasonable, Judge Southup. Thank you. I'd be happy to answer any other questions. Thank you very much, Your Honor. Thank you. Mr. Noss. Your Honor, turning to your question about the inquiry about the election of remedies, I think it's clear that it doesn't matter whether the judgment would be more or less. You exercised one of your exclusive remedies, and that was to recover possession of leased equipment. My client couldn't sell that equipment because my client didn't own that equipment. It was leased equipment. Its rights in that equipment were governed by the lease, and as far as the argument under Section 3325, that doesn't modify 3318. This Court said in G Capital, it said, after setting forth the only two options available, a collection suit to recover accelerated rental payments and additional amounts that are then due or that will become due in the future, and lease cancellation with recovery of possession of the leased property and such additional amounts in liquidated damages and that be contractually provided for under the lease agreement. And then the Court also went on to say, and this was an opinion by Judge Wiener, who is a civilian, because I was fortunate enough to practice with him for a few years before he was appointed to this Court, any provision of a lease agreement to the contrary notwithstanding, the lessor is allowed to select one remedy or the other, but he is not allowed to accumulate both. Counsel, I think you make too much of that. I don't hear from you that Judge Wiener was addressing 3325B. Did he in that opinion? No, but he was going through the history of the entire statute, and I think he would have said something if— Are you reading 3325 out of the statute? Are you saying it's applicable only in certain unrelated situations? I don't think you can just jump from the lease agreement when you say—and she didn't find it unreasonable. She found it unenforceable. She found the provision unenforceable. And so now the Bank of the West is saying, well, you can step outside the lease agreement and look at an entirely different transaction and award damages based on that. That's not what the statute says. The statute says what are the liquidated damages provided by the lease, and typically they're recovery of—cost of recovery of the leased equipment, cost to restore it, cost to get it ready to repair it. Those are standard provisions. That's in your express blower case when they went through that list of additional damages. But it's not the loss of investment on a transaction with the original lessor. I mean, if you look at the lease document, Your Honors, and if we had kept the equipment, and you look at the amount of money they want based on casualty value compared to what they sold the equipment for, it's not even close. I mean, the numbers are startling if we had kept the equipment even through the lease term and wanted to buy it. We'd have to pay, I think the numbers are at the end of the lease term, something like 60 percent of the original value of the equipment. I mean, they sold it and deprived us the opportunity to keep using it or to participate in the sale. They took it. Judge Wiener talks about it. This is a unique statute. Unlike other areas of Louisiana law, it gives the lessor the right to terminate the lease on notice by sending a default notice, and if you don't turn in the equipment within five days of receipt of that notice, they can go to court in a summary proceeding and get a judgment that compels the delivery of the equipment in 24 hours. You can't do that with a piece of real estate. You have to go get the lease judicially terminated. Here it's an exceptional remedy. They exercise that. You don't get to come back under any guise or label and ask for accelerated rent. Cash flow over the life of the lease, that's accelerated rent. I mean, it's future rent. It's not. I mean, cash flow is future rent. That's prohibited. So, again, I think Judge Pritz ruling on the enforceability of the stipulated damages provision is correct. I just don't think the law allows either the cases cited by this Court or the statute itself, you then to step outside the lease document and award stipulated damages based on the lease document. When you look at the numbers, it's nothing more than a portion of the future rent due under the lease. It's not anything other than that. It's a portion of the future rent due under the lease. Thank you very much, Your Honors, and I appreciate the opportunity once again to argue before you. Thank you, Mr. Noss. Your case and all of today's cases are under submission, and the Court is in recess until 9 o'clock tomorrow.